**In re the MARRIAGE OF Jill S. ROLEK and Dennis F. Rolek.**

**Upon the Petition of Jill S. Rolek, Appellant,**

**And Concerning**

**Dennis F. Rolek, Appellee.**

**No. 95–2144.**

Supreme Court of Iowa.

Nov. 20, 1996.

Kermit L. Dunahoo of Dunahoo Law Firm, Des Moines, for appellant.

Timothy M. Duffy, Des Moines, and Jeanne K. Johnson, Des Moines, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

CARTER, Justice.

Petitioner, Jill S. Rolek, appeals from orders entered following a trial of her petition to modify the custody, visitation, and economic provisions of a 1986 decree dissolving her marriage to respondent, Dennis F. Rolek. After reviewing the record and considering the arguments of the parties, we modify and otherwise affirm the district court's orders.

I. ***The Custody and Visitation Issues.***

In conjunction with her petition to modify the 1986 decree, Jill made an application for a restraining order terminating Dennis's visitation and prohibiting him from having any contact with the minor children of the parties. In this application, Jill alleged that Dennis was disabled due to severe depression and substance abuse, had been hospitalized on at least three separate occasions, had recently threatened suicide, and presented a clear and present danger to the safety of the parties' children. Based on this application, an *ex parte* order was entered abating Dennis's visitation rights and prohibiting him from making contact with the children. This order was subsequently modified following notice and hearing to provide telephonic visitation between Dennis and the children.

Following the hearing on the modification petition, the court allowed the joint custody provisions of the 1986 decree to remain in effect with physical care remaining in Jill. The court dissolved the order enjoining Dennis's exercise of visitation and established a schedule of unsupervised child visitation by Dennis. Finally, based on a recommendation in a psychologist's report received in evidence, the court ordered Jill and Dennis to attend counseling sessions with the results to be reported to the court. Jill challenges these orders with respect to joint custody, unsupervised visitation, and the requirement for counseling.

Although the evidence at the hearing indicated that Dennis has made substantial progress in dealing with his depression and substance abuse problems and that his relationship with the children from his marriage to Jill should be encouraged and fostered, we

believe the continuation of joint custody is not in the children's best interests.

At the time of the 1986 decree, the district court was apparently hopeful that the parties were capable of cooperating in those matters affecting the best interests of their children. It is now quite clear that this is not the case. It is very likely that the parties will not be able to agree on many of the fundamental decisions that must be made in their children's lives, such as education and medical treatment. The vesting of such decision-making power in one parent thus seems preferable. When, following a dissolution decree providing joint custody, the actions of the parties indicate that they are no longer able to cooperate, a modification of the custody status is appropriate. *In re Marriage of Winnike,* 497 N.W.2d 170, 174 (Iowa App. 1992); *In re Marriage of Stanley,* 411 N.W.2d 698, 701 (Iowa App.1987). Because Jill appears to be the more stable parent at the present time and has, since March of 1994, assumed a sole custody role on a de facto basis, we modify the 1986 decree so as to vest sole custody of Rachel, Alex, and Brian in Jill, subject to Dennis's visitation rights.

We approve the new visitation schedule established by the district court. However, because Dennis does not object to a limited supervision of his visitation by his present wife Debbie, we modify the district court's order to provide that his visitation shall be exercised in Debbie's presence.

Although the district court's order for counseling was well-intentioned and was the recommendation that had been made in a psychologist's report provided to the court, we are convinced that such efforts will serve no constructive purpose. The frequent conflicts between Jill and Dennis subsequent to the dissolution of their marriage has doubtless produced undesirable consequences on their children. Troubling as that may be, however, we are convinced that Jill's and Dennis's differences are so substantial and of such an extensive duration that counseling will not be fruitful at the present time. It seems more likely that it would only provide a breeding ground for further antagonism. We thus modify the district court's order by deleting the requirement for counseling and reports to the court.

## II. *The Economic Issues.*

Although both parties presented various economic issues in their respective requests to the district court, the only economic issues remaining on this appeal involve tax exemptions for the three children, attorney fees, and costs.

A. *The tax exemption issue.* Jill and Dennis, in a stipulation incorporated into the 1986 dissolution decree, agreed that Jill would claim the dependency tax exemptions for their three minor children for 1986 and 1987. Dennis was to take the exemptions in all years after that, as long as he was current with his child support. At the time of the decree, Jill, an attorney, had $1500 a month in taxable income. Dennis, a practicing physician, had an income from his medical practice and other investments of $214,000 annually.

In the fall of 1993, Dennis underwent treatment for alcoholism and depression and scaled back his medical practice. He stopped practicing medicine in April 1994, and was placed on probation for five years by the board of medical examiners. He has since achieved a year of sobriety and would have become eligible for malpractice insurance in September 1995. He is planning on doing volunteer work, but it is unclear when he will be able to practice medicine again.

Dennis receives approximately $204,000 a year in disability income from three different insurance carriers, one of which is presently challenging his continuing disability status. He has several real estate holdings and earns income from farming. The total value of these holdings is unclear. His second wife, Debbie, is a real estate agent who earned $17,400 in 1994. Dennis and Debbie have three children. Jill's income from her law practice has increased to approximately $60,000 per year. She also receives $2500 per month in alimony. All of this is taxable income. Dennis's disability payments are not taxable income. He paid no state or federal income taxes in 1994 or 1995.

In Jill's modification petition, she requested that she be allowed to take the tax exemptions for all three children. The district court denied this request in its modification order. The court wrote:

> There is considerable merit in her claims; however, the Court believes that a piecemeal approach to support is not a good idea. The whole support package should be examined if any changes are to be made. Accordingly, the court overrules both requests; however, this will not prevent the parties from seeking a modification of all the support issues as to the present facts in the future.

We must consider whether the court's conclusion was appropriate under state and federal law.

1. *Federal law.* The Internal Revenue Code section defining "dependent" states:

> **(e) Support test in case of child of divorced parents, etc.—**
>
> **(1) Custodial parent gets exemption.**—Except as otherwise provided in this subsection, if—
>
> **(A)** a child ... receives over half of his support during the calendar year from his parents—
>
> **(i)** who are divorced or legally separated under a decree of divorce or separate maintenance,
>
> **(ii)** who are separated under a written separation agreement, or
>
> **(iii)** who live apart at all times during the last 6 months of the calendar year, and
>
> **(B)** such child is in the custody of one or both of his parents for more than one-half of the calendar year,
>
> such child shall be treated ... as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter ... referred to as the "custodial parent").
>
> **(2) Exception where custodial parent releases claim to exemption for the year.**—A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the noncustodial parent, if—
>
> **(A)** the custodial parent signs a written declaration (in such a manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and
>
> **(B)** the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year.
>
> For purposes of this subsection, the term "noncustodial parent" means the parent who is not the custodial parent.

26 U.S.C.A. § 152(e) (West 1996). The current version of § 152(e) was part of a tax package passed in 1984 and effective for all tax years after December 31, 1984. 26 C.F.R. § 1.152–4T (1994). This statute was considered in another context in *In re Marriage of Feustel,* 467 N.W.2d 261, 263 (Iowa 1991). The statute was designed to simplify determinations of who between divorced parents is entitled to claim the exemptions. *Serrano v. Serrano,* 213 Conn. 1, 566 A.2d 413, 417 (1989). It repealed special "amount of monetary support" tests for when a noncustodial parent asserted a right to take the exemptions. 49 Fed.Reg. 34451, 34452 (1984). Congress intended to remove the Internal Revenue Service from the middle of divorce disputes. *Rohr v. Rohr,* 118 Idaho 689, 800 P.2d 85, 93 n. 4 (1990) (citing H.R.Rep. No. 432, 98th Cong., 1st Sess., pt. 2, at 3 (1978), *reprinted in* 1978 U.S.C.C.A.N. 697, 1140).

■ 2. *State court decisions on allocating exemptions.* The Internal Revenue Service appears not to care who takes the exemption, as long as it is only taken by one parent. Allocation of the exemption depends on state family law principles. A majority of states, when squarely confronted with a challenge to their power to allocate the exemptions to a noncustodial parent, have concluded that their courts have the power to apply its *local family law* to order such an allocation (either directly or by using the contempt power to compel custodial parents to execute

a dependency exemption waiver). *See, e.g., Monterey County v. Cornejo,* 53 Cal.3d 1271, 283 Cal.Rptr. 405, 812 P.2d 586 (1991); *Serrano,* 213 Conn. 1, 566 A.2d 413; *Rohr,* 118 Idaho 689, 800 P.2d 85; *In re Marriage of Einhorn,* 178 Ill.App.3d 212, 127 Ill.Dec. 411, 533 N.E.2d 29 (1988); *Fudenberg v. Molstad,* 390 N.W.2d 19 (Minn.App.1986); *Nichols v. Tedder,* 547 So.2d 766 (Miss.1989); *Adelman v. Adelman,* 878 S.W.2d 871 (Mo.App.1994); *Hughes v. Hughes,* 35 Ohio St.3d 165, 518 N.E.2d 1213 , *cert. denied,* 488 U.S. 846, 109 S.Ct. 124, 102 L.Ed.2d 97 (1988); *Soriano v. Soriano,* 184 W.Va. 302, 400 S.E.2d 546 (1990). Iowa courts have exercised this power without challenge to their authority to do so. *See, e.g., In re Marriage of Feustel,* 467 N.W.2d 261 (Iowa 1991); *In re Marriage of Eglseder,* 448 N.W.2d 703 (Iowa App.1989); *In re Marriage of Kerber,* 433 N.W.2d 53 (Iowa App.1988). We conclude that an allocation of these exemptions to parents not otherwise eligible to take them under federal law is within the authority of the dissolution court to achieve an equitable resolution of the economic issues presented. Consequently, although Dennis is not the custodial parent entitled to claim the exemptions under federal law, the district court was empowered to alter that status in its 1986 decree. Similarly, the district court and this court are empowered to modify that allocation should circumstances now warrant.

Some states have allocated dependency exemptions to the noncustodial parent in a manner that is consistent with prevailing tests for setting child support obligations. *E.g., Soriano,* 400 S.E.2d at 552; *see* Iowa Child Support Guidelines ¶ 2 (1995) ("The purpose of these guidelines is to provide for the best interest of the children...."). Giving the exemption to the noncustodial parent in these instances may free up more money for the dependent's care. However, in situations that bear some resemblance to the present case, some courts have noted the "inequity of allowing the exemption to remain with the parent who stands to benefit least." *Nichols,* 547 So.2d at 774; *see also Soriano,* 400 S.E.2d at 551–52. For example, in *Marksberry v. Riley,* 889 S.W.2d 47 (Ky.App.1994), the court allocated the exemptions to the divorced couple in alternate years. The appellant ex-wife was an unemployed student with no taxable income, and she objected to her ex-husband's receipt of the exemptions. The court held that it was not an abuse of discretion to allocate the exemption to the ex-husband, since "the maximum benefit will apply if taken" by him. 889 S.W.2d at 48.

3. *Iowa modification rules.* Allocations of these tax exemptions, being directly related to child support, are subject to the general rules for modification of child support. *In re Marriage of Habben,* 260 N.W.2d 401, 403 (Iowa 1977). Modifications are governed by Iowa Code section 598.21 (1993). Section 598.21(8) states that a dissolution decree may be modified if there has been "a substantial change in circumstances." In *Mears v. Mears,* 213 N.W.2d 511 (Iowa 1973), this court discussed the meaning of this standard.

> The changed circumstances relied upon must be material and substantial, not trivial, more or less permanent or continuous, not temporary, and must be such as were not within the knowledge or contemplation of the court when the decree was entered.

213 N.W.2d at 515. Modifications, when made, should be in the best interest of the children, *see* Iowa Child Support Guidelines ¶ 2 (1995), although the court has wide discretion in providing for the best interests of the children. *Cf. In re Marriage of Bolick,* 539 N.W.2d 357 (Iowa 1995).

The trial court, characterizing Jill's modification request as "piecemeal," indicated that it would only reexamine the entire support package. As applied to the present case, this rationale is questionable. It is not clear how it would be in anyone's best interests to require the Roleks to litigate the economic issues more extensively than it is their desire to do so. Although Jill and Dennis agree on little, they apparently agree that the present arrangement for alimony and child support is appropriate.

We conclude that Jill has met her burden of showing that there was a substantial change in circumstances justifying a modification of the decree's allocation of tax exemptions for the three minor children. The district court noted as much when it

stated that there was "considerable merit in her claims." The change in circumstances was material and substantial. Dennis's income, once subject to taxes, is now tax free, while Jill continues to have tax liability. Dennis has three exemptions from the children of his second marriage. Shifting the other three exemptions to Jill would decrease her tax liability by at least several hundred dollars, while impacting Dennis's much less. Jill's income is taxed in the twenty-eight percent bracket. Dennis, most of whose income is not taxable, would be taxed in the fifteen percent bracket, if at all. Under a hypothetical set of facts closely mirroring Jill's 1994 tax return, shifting the exemptions to her would decrease the federal income tax she owes by $2142.

We believe the change in circumstances involving Dennis's tax-exempt income is not temporary. Although he argues that it is conceivable that he may return to work as a physician at any time, that is highly doubtful based on the matters that appear in the record. Jill demonstrated that Dennis had been disabled for over two years on the date this matter was argued before the trial court. This is the situation of the parties at the present time, and there is nothing to indicate that it is not permanent. For these reasons, we modify the 1986 decree to allow Jill to claim the exemptions for the parties' three minor children on her federal and state income tax returns. Dennis shall execute all documents required under Internal Revenue Service regulations and Iowa Department of Revenue and Finance regulations to permit that result.

**B.** *Attorney fees and costs.* On the issue of attorney fees, we affirm the district court's order requiring each party to pay their own attorney fees in the district court. We order Dennis to pay $1200 to apply upon Jill's attorney fees on appeal. On the issue of costs, we affirm the district court's taxing of costs equally between the parties. Costs on appeal are assessed seventy percent to Dennis; thirty percent to Jill.

**AFFIRMED AS MODIFIED.**